**Richard MILLER, Plaintiff,**

v.

**EBY REALTY GROUP, Defendant.**

**Civil Action No. 01–2333–CM.**

United States District Court,
D. Kansas.

Jan. 6, 2003.

Michael W. Lerner, Overland Park, KS, for plaintiff.

Carl A. Gallagher, Patrice M. Brown, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court is defendant Eby Realty Group's Motion for Summary Judgment (Doc. 19). Plaintiff Richard Miller, a former employee of defendant, alleges that defendant terminated plaintiff's employment and retaliated against him on the basis of his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1) & (d). Further, plaintiff claims defendant unlawfully breached plaintiff's contract of employment. As set forth below, defendant's motion is granted in part and denied in part.

## I. Facts[1]

### • The Parties

Defendant Eby Realty Group, Inc., is the successor in interest of EMC, Inc. (EMC). EMC was a company that managed assisted living facilities. During the time of the events giving rise to this cause of action, Eby Holdings, Inc., wholly owned EMC. Eby Holdings, Inc. is owned by Don and Judy Eby; Dr. Ray Cook; and the Ebys' children, Joe, Mike, and Andy Eby. EDM, Inc. (EDM), a company

in the business of constructing assisted living facilities, was another subsidiary of Eby Holdings, Inc. during the relevant time period.

### • Termination of Plaintiff's Employment and Replacement by Alan Fairbanks

EMC hired plaintiff as a General Manager on October 21, 1997. In 1999, EDM experienced a substantial loss of its construction business after Alterra, EDM, Inc.'s largest consumer and primary source of revenue, fell into financial difficulty and canceled its contracts with EDM. EDM and other Eby Holdings companies endured substantial cash flow problems as a result. Defendant states that, between June and December 1999, pursuant to a reduction in force, twenty-eight employees' positions were eliminated on "an ad hoc basis," "based upon cash flow considerations." (Def.'s Mot. Summ. J. at 4). Plaintiff contends that the employees whose jobs were eliminated were not employees of EMC.

On November 29, 1999, Don Eby terminated plaintiff's employment. At the time of the termination of his employment, plaintiff was fifty-six years old. On the following day, EMC replaced plaintiff with Alan Fairbanks, who was thirty-two years old.

The parties stipulated that the sole reason defendant provided to plaintiff for his termination was a reduction in force. Further, the parties stipulated that, in making its decision to terminate plaintiff, defendant did not give any consideration to the plaintiff's past performance as General Manager.

---

1. All facts discussed in this section and elsewhere in the opinion are either uncontroverted in accordance with District of Kansas Rule 56.1, or are viewed in the light most favorable to plaintiff as the non-moving party pursuant to the applicable summary judgment standard.

● **Alleged Retaliation**

In his second claim, plaintiff alleges defendant retaliated against him by (1) reducing his severance salary package from sixty days' salary to two weeks' salary; (2) requiring plaintiff to return a truck leased by defendant to defendant by the end of December 1999; (3) failing to pay plaintiff's health insurance for the length of time defendant had promised; (4) refusing to provide financial documents so that plaintiff could calculate bonuses to which he believed he was entitled; and (5) failing to pay plaintiff a $10,000 bonus for 1998.

Plaintiff claims that defendant breached its agreement, made at the time of plaintiff's termination, to provide plaintiff with two months' worth of salary and benefits, and the use of the company vehicle that plaintiff was driving for as long as he needed it. In contrast, defendant states that plaintiff was not offered two months' worth of salary and benefits, but rather, two weeks' salary and benefits. Plaintiff claims that defendant withdrew its offer after plaintiff hired legal counsel to assist him in pursuing a claim against defendant. Defendant, however, claims plaintiff was not entitled to receive an enhanced severance package, including two weeks' additional salary, because plaintiff did not sign a release that defendant required in order for him to receive such benefits. Defendant states plaintiff was given severance benefits in accordance with his at will contract. No copy of plaintiff's employment contract with defendant appears in the record.

With respect to the $10,000 bonus, defendant states that plaintiff did not receive the bonus because plaintiff missed by $98,000 the financial goal he was required to obtain in order to receive the bonus. Plaintiff, however, argues that defendant erroneously made certain accounting adjustments in order to create the appearance that plaintiff has failed to meet the goal.

● **Alleged Age–Based Animus by Defendant**

To support his claim of age discrimination, plaintiff claims that individuals associated with the Eby Companies made a series of four remarks that demonstrate age-based animus. Defendant does not dispute that the remarks were made. On plaintiff's first day on the job, he went to lunch with Don, Joe, and Mike Eby. Plaintiff claims that, at some point during the lunch, Don Eby remarked that he believed himself to be "getting old and creaky." After plaintiff told Don Eby he was older than Don Eby, Don Eby asked plaintiff how old he was. Plaintiff claims he was offended by Don Eby's statement about "getting old and creaky" because that statement "inferred that [plaintiff] was also getting old and creaky."

At a conference in late 1997 or early 1998, after viewing a slide of a 93–year–old man in excellent physical condition, Don Eby remarked, "That's what [plaintiff] is going to look like in a few years." (Def.'s Mot. Summ. J. Attach. E at 26:9–12). Plaintiff states that, after he told Don Eby his comment "was not a fair remark," Don Eby laughed. (*Id.* at 27:14–16).

On two occasions in late 1997 or early 1998, Judy Eby remarked to plaintiff that Don Eby had grayer hair than plaintiff even though plaintiff was older than Don Eby. Judy Eby also told plaintiff that Don Eby was having difficulties with his knees and hips, and that plaintiff was in better shape than Don Eby. Plaintiff states that Judy Eby did not make this statement "close to the time when [his] employment was terminated." (*Id.* at 29:13–15).

● **Alleged Pretextual Reasons for Plaintiff's Termination**

Plaintiff alleges, and defendant does not refute, that when plaintiff's employment was terminated, he was told not only that his termination was due to a reduction in the work force, but also that his position as General Manager of EMC was being eliminated. In addition, defendant does not refute plaintiff's contention that he was told that, after his position was eliminated, Don or Mike Eby would perform the functions that plaintiff had been performing. Defendant does not controvert that the statements regarding Don or Mike Eby's performance of plaintiff's position were untrue.

At the time plaintiff's employment was terminated, his base salary was approximately $82,500, and he was entitled to receive bonuses of up to $5,000 each quarter, depending on his performance. After Mr. Fairbanks replaced plaintiff, Mr. Fairbanks began receiving a salary of $80,000, which was $5,000 more than Mr. Fairbanks's previous salary as an employee of defendant. Mr. Fairbanks received the same bonus potential as plaintiff.

Prior to the time plaintiff was replaced by Mr. Fairbanks, Mike Eby, who was President of EMC, discussed with Jill Craft, Vice President of Human Resources of EMC, the option of placing Mr. Fairbanks into the position plaintiff had occupied. In addition, on July 27, 2000, Don Eby wrote a letter to the Equal Employment Opportunity Commission (EEOC) in response to plaintiff's discrimination claim, which stated that he had "considered factors of merit, competence and overall qualifications" of plaintiff in making the decision to terminate his employment. However, as noted above, the parties stipulated that the sole reason defendant provided to plaintiff for his termination was a reduction in force, and, further, that in making its decision to terminate plaintiff, defendant did not give any consideration to the plaintiff's past performance as General Manager.

● **Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts show-

ing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## II. Termination

Plaintiff claims that defendant terminated his employment on the basis of his age in violation of the ADEA, which makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA's protections are limited to individuals who are at least 40 years of age. *Id.* § 631(a).

### A. Legal Standard

Because plaintiff has presented only circumstantial evidence that defendant terminated his employment because of his age, the court analyzes plaintiff's termination claim under the burden shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93

S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1441 (10th Cir.1996). The plaintiff bears the initial burden of establishing a prima facie case of age discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the termination of plaintiff's employment. *Id.* The burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief.'" *Marx v. Schnuck Mkts., Inc.,* 76 F.3d 324, 327 (10th Cir.1996). "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997) (internal citations omitted). However, "[m]ere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.* (citing *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988)).

### B. Prima Facie Case

To establish a prima facie case of age discrimination under the ADEA, plaintiff must put forth sufficient evidence to show that "(1) the employee belongs to the protected age group; (2) the employee's job performance was satisfactory; (3) the employee was discharged; and (4) the employee was replaced by a younger person." *MacDonald,* 94 F.3d at 1441 (quoting

*Thomas v. IBM,* 48 F.3d 478, 486 (10th Cir.1995)).

Here, plaintiff has presented all of the elements necessary to establish a prima facie case of age discrimination. The parties have stipulated that plaintiff was above age forty at the time of the termination of his employment. Further, the parties have stipulated that plaintiff's job performance was not a consideration in the decision to terminate his employment, thus indicating that the second element of a prima facie case is satisfied. The parties also have stipulated that plaintiff's employment was terminated and that plaintiff was replaced by Mr. Fairbanks, who was thirty-two at the time he filled the position.

## C. Legitimate, Nondiscriminatory Reason

Having found that plaintiff has met his initial burden, the court turns to the question whether defendant can provide a legitimate, nondiscriminatory reason for terminating plaintiff's employment. Defendant states that plaintiff's employment was terminated as part of a reduction in force caused by defendant's financial difficulties. Based upon its review of the record, the court finds defendant has met its burden.

## D. Pretext

██ However, the court also finds that plaintiff has set forth sufficient evidence from which a reasonable jury could conclude that defendant's proffered reason is unworthy of belief. "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing*

*Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Specifically, although defendant indicated in a letter to the EEOC that plaintiff's job performance was a factor in its decision to terminate plaintiff's employment, the parties stipulated that the reduction in force was the sole reason for plaintiff's termination. Further, plaintiff points out that officials of defendant told plaintiff his position was being eliminated and that Don Eby and Mike Eby would take over the duties that plaintiff previously had fulfilled. However, Mr. Fairbanks was hired to fill plaintiff's position on the day after the termination of plaintiff's employment. Such inconsistencies are sufficient to cast doubt upon defendant's assertion that a reduction in force was the sole reason for plaintiff's termination.[2] The court therefore denies defendant's motion for summary judgment to the extent it is based on plaintiff's claim that he was unlawfully terminated on the basis of his age.

## III. Retaliation

Next, plaintiff claims defendant retaliated against him in violation of the ADEA by withdrawing certain favorable severance package offers after plaintiff informed defendant he was hiring legal counsel to pursue his discrimination claim. As previously set forth, plaintiff states defendant retaliated against him by: (1) reducing his severance salary package from sixty days' salary to two weeks' salary; (2) requiring plaintiff to return a truck leased by defendant to defendant by the end of December 1999; (3) failing to pay plaintiff's life, health, and dental insurance for the length of the offered extended salary package; (4) refusing to provide financial documents so that plaintiff could calculate

---

2. Having found that plaintiff's showing of pretext is a sufficient basis for denial of defendant's motion for summary judgment on this point, the court does not examine the statements plaintiff claims constitute evidence of age-based animus.

bonuses to which he believed he was entitled; and (5) failing to pay plaintiff "any of the bonuses to which he was entitled." (Compl. at 6).

## A. Federal Rule of Civil Procedure 56(e)

Initially, the court notes that plaintiff has failed to provide factual support beyond the pleadings for the fourth and fifth alleged retaliatory actions: that defendant failed to provide certain documents, and that defendant failed to pay certain bonuses to which plaintiff was entitled. Federal Rule of Civil Procedure 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue of trial." Fed.R.Civ.P. 56(e). Further, if the adverse party does not respond in accordance with the rule, summary judgment shall be entered against the adverse party if it is appropriate. *Id.*

 Here, plaintiff has set forth no facts to oppose defendant's motion for summary judgment as to whether defendant failed to provide plaintiff with the requested documents. Regarding the bonuses, plaintiff failed to set forth any facts alleging that defendant withdrew a bonus offered to plaintiff in retaliation for plaintiff's alleged protected activity. First, the court notes that plaintiff does not state that a bonus was part of the enhanced severance package that plaintiff claims defendant withdrew in retaliation. Although plaintiff states the enhanced severance package included "two months' salary and benefits" (Pl.'s Resp. at 12), plaintiff does not set forth facts indicating that a bonus was part of that package. Second, plaintiff

does not set forth any facts supporting the proposition that defendant failed to pay him any other bonuses in retaliation. Because plaintiff alleges in his breach of contract claim that he did not receive the $10,000 bonus and the Earnings Before Interest, Taxes, Depreciation, Amortization and Reorganization (EBITDAR) bonus because defendant breached plaintiff's contract of employment, and because such bonuses are also included in the damages plaintiff claims for wrongful discharge, plaintiff has not set forth any facts indicating that these two bonuses constitute part of defendant's alleged *retaliatory* action against plaintiff. Nor has plaintiff alleged that he failed to receive any other bonus as part of his retaliation claim.

Furthermore, even if the court were to consider plaintiff's response to defendant's motion for summary judgment as it relates to these two issues, the court finds plaintiff's "unsupported allegations are insufficient to create any genuine issue of material fact which would preclude the entry of summary judgment." *Bastian v. United States Bureau of Prisons,* 216 F.3d 1086, 2000 WL 825713, at *2 (10th Cir.2000) (Table).

Given these factual deficiencies, the court determines that plaintiff has failed to meet the evidentiary standard set forth by Rule 56(e). Plaintiff may not simply rest upon the allegations in the complaint in order to withstand a motion for summary judgment. The defendant's motion is therefore granted to the extent it seeks summary judgment relating to defendant's alleged failure to provide documents to plaintiff and to pay plaintiff a bonus in retaliation for his engagement in activity protected by the ADEA. The court next examines the remaining elements of plaintiff's retaliation claim.

## B. Prima Facie Case

The court now turns to the remaining alleged retaliatory acts. Specifically, plaintiff claims defendant retaliated against him by withdrawing an offer of "two months' worth of salary and benefits," as well as "the use of the company car for as long as he needed it" (Pl.'s Resp. at 12) and failing to pay plaintiff's life, health, and dental insurance for the length of the offered extended salary package.

■ Under the ADEA, an employer may not "discriminate against any of his employees or applicants for employment ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). The court analyzes plaintiff's retaliation claim under the *McDonnell Douglas* framework set forth above. *Accord Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985–86 (10th Cir. 1996). To establish a prima facie case of age-based retaliation, plaintiff must put forth evidence to demonstrate that (1) plaintiff engaged in a protected activity under the ADEA; (2) that defendant was aware of plaintiff's participation in the protected activity; (3) that the plaintiff was subjected to an adverse employment action; and (4) that there is a nexus between the protected activity and the adverse action. *Smith v. Bd. of County Comm'rs of Johnson County*, 96 F.Supp.2d 1177 (D.Kan.2000).

■ The court finds plaintiff has not set forth sufficient evidence to establish a genuine issue of material fact regarding whether plaintiff experienced retaliation. Initially, the court notes plaintiff has failed to set forth the elements needed to present a prima facie case. First, plaintiff's action in hiring an attorney is activity protected by the ADEA. *Accord Connell v. Bank of Boston*, 924 F.2d 1169, 1179 (1st Cir.1991). Second, plaintiff has set forth sufficient evidence to indicate that he told defendant's management that he had hired an attorney.

■ The court next examines whether plaintiff was subjected to an adverse employment action when defendant withdrew its initial offer of additional severance benefits.[3] An "adverse employment action" is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Although the Tenth Circuit liberally defines the phrase "adverse employment action," it will not consider "a mere inconvenience or an alteration of job responsibilities" to be an adverse employment action. *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir.1998). Under this standard, the court determines that a reduction in contracted-for severance benefits constitutes an "adverse employment action," because it constitutes a substantial alteration in the terms and conditions of plaintiff's employment.

■ In this case, however, construing the evidence in the light most favorable to plaintiff as the nonmoving party, the court finds that defendant's action in withdrawing an offer of enhanced severance bene-

---

3. The court notes that it is possible for plaintiff to have been subjected to an adverse employment action for purposes of retaliation, even though he had been discharged and was no longer an "employee" of defendant at the time of the alleged adverse employment action. *Accord Rutherford v. Am. Bank of Commerce*, 565 F.2d 1162, 1166 (10th Cir.1977).

fits did not alter the terms, conditions, or benefits of plaintiff's employment. The court therefore concludes plaintiff cannot establish that he experienced an adverse employment action within the meaning of the ADEA. Specifically, plaintiff claims that, after plaintiff informed defendant he was hiring legal counsel, defendant revoked an offer of *additional* severance benefits beyond those to which plaintiff was entitled under the terms of his employment contract.

■ Moreover, plaintiff does not argue that he accepted defendant's offer, nor does he offer any other evidence that he was otherwise entitled to receive the additional severance benefits. Defendant points out that another member of management, James Schweller, received an enhanced severance package only after he signed a release of his rights to bring ADEA claims against defendant. An employer's withdrawal of an offer to pay *additional* benefits upon an employee's failure to execute a waiver offered in exchange for them is not retaliation within the meaning of the ADEA. *Paquin v. Fed. Nat'l Mortgage Ass'n,* 935 F.Supp. 26, 36 (D.D.C.1996), *rev'd in part on other grounds,* 119 F.3d 23 (D.C.Cir.1997) (stating, in the ADEA waiver context, that "[i]f severance pay is contractually required, it cannot be applied unequally, but if a separation package constitutes an additional benefit that was not specifically guaranteed, it may be negotiated, waived, or refused"); *Cronin v. ITT Corp.,* 737 F.Supp. 224, 231 (S.D.N.Y. 1990) (rejecting plaintiff's argument that defendant's refusal to pay additional severance benefits was motivated by a desire to retaliate against him because of his refusal to sign a release of ADEA claims and his filing of age discrimination claim, when plaintiff did not fulfill the condition precedent to receipt of such

benefits); *see also Gray v. N. Telecom, Inc.,* No. 95 C 7485, 1998 WL 386359 (N.D.Ill. July 6, 1998) (finding plaintiff's claim of retaliation based on sex and gender failed because plaintiff refused to sign a waiver upon which receipt of severance benefits was conditioned).

In addition, the court notes that the Older Worker's Benefit Protection Act (OWBPA) *requires* an employer to offer an employee additional consideration in exchange for an employee's waiver of his or her rights under the ADEA. 29 U.S.C. § 626(f)(1) ("An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary.... [A] waiver may not be considered knowing and voluntary unless at a minimum ... (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual is already entitled"); *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998); *Bennett v. Coors Brewing Co.,* 189 F.3d 1221, 1227–28 (10th Cir.1999).

The act contemplates that an employer can refuse to provide an employee with the additional consideration offered in such a waiver agreement after the employee refuses to execute the agreement. Even when the employee's refusal to waive his rights is accompanied by a statement that the employee is hiring legal counsel to pursue a discrimination claim, withdrawal of an offer of additional consideration remains a consequence contemplated by Congress in adopting the OWBPA. Such a scenario is fundamentally different from that in which an employer, upon hearing that an employee wishes to enforce his rights, takes away a benefit to which an employee is already entitled.

Based upon the facts before it, the court finds that no reasonable jury could conclude that defendant's revocation of its

alleged offer of two additional weeks' salary and benefits constituted an alteration in the terms and conditions of plaintiff's employment. Consequently, plaintiff cannot establish that he suffered an adverse employment action as contemplated by the ADEA. Finding that plaintiff has not met his burden to establish a prima facie case, the court grants defendant's motion for summary judgment as to plaintiff's retaliation claim.

## IV. Breach of Contract

In his third claim, plaintiff alleges defendant breached its at will contract with plaintiff by failing to pay him a $10,000 bonus and by failing to pay him an EBITDAR bonus for the fourth quarter of calendar year 1999. Plaintiff also claims that defendant's offer of enhanced settlement contracts modified his at will employment contract, and that defendant breached the modified contract by failing to pay enhanced severance benefits to plaintiff as set forth in the above discussion of plaintiff's retaliation claim.

Defendant does not dispute that the $10,000 bonus and the EBITDAR bonus were set forth in plaintiff's employment contract. However, defendant contends plaintiff was not entitled to receive the $10,000 bonus because he failed to meet the condition precedent to the payment of the bonus. Plaintiff, on the other hand, claims defendant made improper accounting adjustments in an attempt to create the appearance that plaintiff was not entitled to the bonus. Regarding the EBITDAR bonus, defendant contends plaintiff was not entitled to the bonus because plaintiff was not employed by defendant for the full term of the fiscal quarter in question, and had thus failed to satisfy a condition precedent to the payment of the bonus.

■ Construing all facts in the light most favorable to the plaintiff as the nonmoving party, the court finds plaintiff has demonstrated a genuine issue of material fact regarding whether the conditions precedent to the payment of these bonuses were satisfied. Specifically, plaintiff has shown a genuine issue of material fact as to whether he was entitled to receive the $10,000 bonus because the record is unclear whether defendant made improper accounting adjustments. In addition, a genuine issue of material fact exists as to whether plaintiff should have received the EBITDAR bonus. As the court already has concluded, a genuine issue of material fact exists regarding whether plaintiff was wrongfully terminated because of his age. If the trier of fact concludes plaintiff was wrongfully terminated, the EBITDAR bonus could be part of the compensation to which plaintiff is entitled as damages for his wrongful termination claim. However, if defendant did not act improperly in terminating plaintiff's employment, plaintiff was not entitled to the EBITDAR bonus. Accordingly, the court denies defendant's motion for summary judgment as it relates to the payment of the $10,000 bonus and the EBITDAR bonus.

■ Regarding the alleged modifications to plaintiff's employment contract contained in the release, the court finds that plaintiff has failed to provide evidence that defendant's offer modified plaintiff's contract of employment. Specifically, plaintiff has put forth no evidence nor made any allegation indicating that he accepted defendant's offer of the extended benefits. In fact, plaintiff claimed that he was retaliated against when the offer was withdrawn. Because plaintiff never accepted defendant's offer, the court finds as a matter of law that plaintiff's employment contract was not modified by this offer. The court therefore grants defendant's

motion for summary judgment as it relates to the alleged modifications of plaintiff's employment contract.

## V. Order

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 19) is granted in part and denied in part.

Defendant's motion is denied as to plaintiff's wrongful termination claim.

Defendant's motion is granted as to plaintiff's retaliation claim.

Defendant's motion is denied as to plaintiff's breach of contract claim, to the extent plaintiff claims he failed to receive the $10,000 bonus and the EBITDAR bonus. Defendant's motion is granted as to plaintiff's breach of contract claim, to the extent it is based upon defendant's alleged failure to pay extended severance benefits.