# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

# SUNDANCE REHABILITATION CORPORATION, Defendant.

### No. 1:01 CV 1867.

United States District Court, N.D. Ohio, Eastern Division.

July 26, 2004.

C. Larry Watson, Jeffrey A. Stern, Lawrence Mays, U.S. Equal Employment Opportunity, Cleveland, OH, for Plaintiff.

Dean E. Westman, Kastner, Westman & Wilkins, Akron, OH, for Defendant.

*MEMORANDUM OF OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

WELLS, District Judge.

The Equal Employment Opportunity Commission (the "EEOC") brings this action against defendant SunDance Rehabilitation Corporation ("SunDance"), claiming that SunDance's policy of requiring its terminated employees to waive their rights to file a charge with the EEOC in exchange for severance payments constitutes retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII),[1] the Equal Pay Act of 1963(EPA),[2] the Age Discrimination in Employment Act (ADEA),[3] and the Americans with Disabilities Act of 1990(ADA).[4] The EEOC seeks injunctive relief.

The parties filed cross-motions for summary judgment. This Court referred the motions to United States Magistrate Judge Jack Streepy for a report and recommendations ("R & R"). Magistrate Judge Streepy recommends that the EEOC's Motion for Summary Judgment be denied and SunDance's Motion for Summary Judgment be granted. The EEOC objects to the R & R. For the reasons that follow, the R & R will not be adopted. The EEOC's Motion for Summary Judgment will be granted and Sun-

---

**1.**  42 U.S.C. § 2000e–3(a).

**2.**  29 U.S.C. § 215(a)(2).

**3.**  29 U.S.C. § 623(d).

**4.**  42 U.S.C. §§ 12117(a) and 12203.

Dance's Motion for Summary Judgment will be denied.[5]

## I. Factual Background

Elizabeth Salsbury, a speech pathologist and an employee of SunDance, was terminated on 1 March 1999 as part of Sun-Dance's company-wide reduction in force. (McNett Aff. ¶ 2, Salsbury Decl. ¶ 2.) SunDance's termination letter informed Ms. Salsbury that:

If you choose to stay through to your termination date and continue to fulfill the requirements of your job, as outlined in the company's reduction in force and severance policies, you will receive 80 hours of severance pay, less applicable taxes and withholdings, after you sign a Separation Agreement and General Release, and after you return company property.

(Docket # 24, Ex. A–1, p. 1). The Separation Agreement and General Release (the "Separation Agreement") contained a provision to release SunDance from all claims arising before the date of the release. It further provided:

*Severance Pay:* Upon execution of this Release by Elizabeth Salsbury and its delivery to Company, Company will, as full and complete consideration and severance: pay in one lump sum an amount equal to 80 hours of pay at the base rate.

*General Release:* Releasor ... expressly agrees that she will not institute, commence, prosecute or otherwise pursue any proceeding, action, complaint, claim, charge or grievance against Company ... in any administrative, judicial or other forum whatsoever with respect to any acts or events occurring prior to the date hereof in the course of Releasor's dealings with Release.

*Return of Severance Pay:* In the event that the provisions of this Agreement are violated, Releasor agrees that the Company shall have the right to seek and obtain injunctive relief and damages in any court of competent jurisdiction from said violation, including the right to the return of the entire amount of the consideration paid by the Company under this Agreement, plus any other damages proven, including reasonable attorney's fees and costs.

(Docket # 24, Ex. A–1, p. 3–4).

After receiving the Agreement, Ms. Salsbury called SunDance's Human Resources Department at its "1–800" number and talked to a representative whose name Ms. Salsbury does not remember. Ms. Salsbury asked him whether she could strike out the part of the Separation Agreement that prohibited her from filing a charge with the EEOC. The representative allegedly answered "no" and stated that any alterations of the Separation Agreement would be null and void. (Salsbury Decl. ¶ 7.)

Ms. Salsbury did not sign the Separation Agreement. On 20 April 1999, she

---

**5.** Under 42 U.S.C. § 2000e–5(f), the EEOC may bring a civil action against a respondent to a charge of discrimination if "the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission." The EEOC has neither stated in its Complaint nor submitted any evidence along with its motion for summary judgment showing that it has been unable to secure a conciliation agreement from Sun-Dance. In SunDance's Exhibit A–3, the EEOC's determination letter, the EEOC stated that it "attempts to eliminate the alleged unlawful practice by informal methods of conciliation," and "invites the parties to join with it in reaching a just resolution of this matter." (Doc. # 24.) The record is devoid of information as to the result of any conciliation effort. However, because SunDance does not challenge the EEOC's authority to bring the current action, the Court presumes the EEOC was unable to secure an acceptable conciliation agreement and the analysis will proceed on this assumption.

brought a charge of discrimination with the EEOC against SunDance, alleging that on or about 15 December 1998 she was denied a promotion on the basis of her sex. She further stated:

I was also asked to sign a separation agreement, general release and covenant not to sue agreement in order to get a lump sum payment of 80 hours. I did not sign this release because I believe it violates the [l]aws administered by the EEOC.

(Docket # 24, Ex. A–2.)

The EEOC investigated Ms. Salsbury's charge. Upon the EEOC's request, Sun-Dance submitted its reduction in force policy and procedure and its severance policy for reduction in force. (Smith Decl. ¶ 3–4.) On 30 September 1999, the EEOC issued a determination finding that "there is not reasonable cause to believe that [Ms. Salsbury] was discriminated against on the promotion or lay-off issues and no proof of sex discrimination." (Docket # 24, Ex. A–3). It went on to state:

However, with regard to the Waiver/Release, investigation reveals that Respondent requested that Charging Party sign a "General Release." This "General Release" fails Section 7(f)(1)(C) of the ADEA, 29 U.S.C. sec. 626(f)(1)(C), and thereby fails to meet the criteria for a knowing and voluntary waiver, as set forth in Section 7(f)(1)(A)-(G), 29 U.S.C. secs. 626(f)(1)(A)-(G), in violation of the ADEA, as amended by the Older Workers' Benefit Protection Act (OWBPA). Moreover, the waiver provision may produce a chilling effect, thereby undermining the Commission's ability to enforce the ADEA, Title VII, the EPA and the ADA. These provisions may intimidate or have the effect of intimidating employees and create disincentives for them to cooperate with EEOC in safeguarding the public interest.

(Docket # 24, Ex. A–3).

On 12 February 2000, Ms. Salsbury filed a second EEOC charge, alleging that Sun-Dance's failure to recall her to two positions was retaliation for her filing her first charge of discrimination with the EEOC. The EEOC dismissed her claim and issued her a right to sue letter. (Docket # 24, Ex. A–4 & A–5.)

On 7 March 2000, Ms. Salsbury signed the Separation Agreement, but SunDance had already gone bankrupt and she did not receive the 80 hours' severance pay. (Salsbury Decl. ¶ 9–11.) On 20 July 2000, the EEOC ruled on Ms. Salsbury's second charge, deciding it could not find a violation. (Docket # 24, Ex. A–5.)

The EEOC brings the current action following the Commission's determination of 30 September 1999, alleging that the Separation Agreement constitutes retaliatory discrimination in violation of Title VII, the EPA, the ADEA, and the ADA.

## II. R & R and EEOC's Objections

Magistrate Judge Streepy recommends that summary judgment be entered for SunDance on the EEOC's EPA, ADEA, and ADA violation claims and on the part of the EEOC's Title VII claim that relates to discrimination on the basis of protected traits other than gender. He reasons that those claims should be dismissed because "[t]he EEOC has not submitted any evidence regarding (1) the number of employees who were laid off by SunDance, (2) the number who received a severance pay proposal that was conditioned on signing a Separation Agreement, and (3) whether any other employees qualified to file a charge under the ADEA, or the ADA, or the EPA, or Title VII on the basis of a protected class other than gender." (Docket # 39, p. 6–7).

Magistrate Judge Streepy determined that, on the EEOC's Title VII retaliation claim based on gender, SunDance's severance payment policy is not, as the EEOC claims, facially retaliatory. Judge Streepy relies on cases holding that an employee's knowing and voluntary waiver of possible employment-related discrimination claims will be enforced in federal courts in the absence of fraud, duress, lack of consideration or mutual mistake. *Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105 (6th Cir.1989); *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir.1995); and *Runyan v. National Cash Register Corp.*, 787 F.2d 1039, 1044–1045 (6th Cir.1986) (en banc). He rejected the contrary position articulated by the EEOC in its Enforcement Guidance on Non–Waivable Employee Rights Under EEOC Enforced Statutes ("Enforcement Guidance") because he determined that the legal interpretations of the Enforcement Guidance should be respected for their persuasiveness but do not deserve deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Magistrate Judge Streepy then considered the EEOC's indirect evidence of discrimination. He found insufficient indirect evidence of retaliation to meet the *McDonnell Douglas* prima facie standard. According to the R & R, the EEOC failed to show that Ms. Salsbury engaged in a protected activity, that SunDance's refusal to award Ms. Salsbury severance pay constituted an adverse employment action since Ms. Salsbury's refusal to sign was not a protected activity, or that there was a causal connection between any protected activity and any alleged adverse employment action.

For the above reasons, Magistrate Judge Streepy recommends that summary judgment be granted in favor of SunDance and against the EEOC.

The EEOC timely filed objections to the R & R. Under Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the Court reviews de novo the portion of the Magistrate Judge's R & R to which specific objection was made. Because the EEOC raised objections to the entire R & R, this Court will consider de novo the parties' cross-motions for summary judgment.

### III. Standard for Summary Judgment

Summary judgment is appropriate if the evidence in the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). To survive summary judgment, the dispute must involve a genuine issue of material fact; that is, a fact that might affect the outcome of the suit under the governing substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Summary judgment is intended as a mechanism for isolating and disposing of "factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. To that end, the inquiry on summary judgment mirrors the directed verdict standard, and summary judgment should be entered when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). In considering a motion for

summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## IV. Analysis

### A. *Actionable claims*

The EEOC claims that the language in the Separation Agreement requiring a releasor to give up her right to file a charge with the EEOC is per se retaliatory under Title VII, the EPA, the ADEA, and the ADA. Alternatively, the EEOC argues it has established a prima facie case of retaliation under each of these statutes with indirect evidence. Although the magistrate judge reasoned in his R & R that summary judgment should be entered for SunDance on the EEOC's claims based on the ADEA, ADA, EPA, and Title VII (except the claim based on gender), on de novo review this Court disagrees.

The explanation in the R & R for deciding the above claims in favor of SunDance is that the EEOC "has not established a genuine issue of material fact that the above statutes have been violated." (Docket # 39, p. 7). The presumption by the magistrate appears to be that the EEOC may only initiate an action on behalf of an individual who experienced discrimination under one of the laws it enforces. While this may represent the typical circumstances in which the EEOC initiates a lawsuit, in fact, the EEOC enjoys broader authority.

■ Under 42 U.S.C. sec.2000e–5, once a charge alleging unlawful employment practices is filed with the EEOC, the EEOC conducts an investigation of the allegations. "[T]he EEOC's investigative authority is tied to charges filed with the Commission." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984). It is "entitled to access only to evidence 'relevant to the charge under investigation.'" *Id.* quoting 42 U.S.C. sec. 2000e–8(a). However, "[a]ny violations

that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." *General Telephone Company of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 331, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

> In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act.

*EEOC v. General Electric Company*, 532 F.2d 359, 366 (4th Cir.1976). *See also Park v. Howard University*, 71 F.3d 904, 907 (D.C.Cir.1995) ("A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.' At a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'") (citations omitted).

■ The initial charge and the determination issued in response to it by the EEOC determine the scope of any subsequent lawsuit brought by the EEOC. *General Electric Co.*, 532 F.2d at 366. In this case, the charge filed by Elizabeth Salsbury included her statement that she did not sign the Separation Agreement because she believed it violated the laws enforced by the EEOC. (Docket # 24, Ex. A–2). In addition, the determination made by the EEOC included a finding that SunDance's Separation Agreement was not a knowing and valid waiver of the right to file an EEOC charge and thus violated the ADEA, and undermined the "Commis-

sion's ability to enforce the ADEA, Title VII, the EPA and the ADA." (Docket # 24, Ex. A–3.). Therefore, the EEOC properly brought this action pursuant to the ADEA, ADA, EPA, and Title VII because the charge and determination clearly stated that the waiver/release contained in SunDance's Agreement was the focus of the EEOC's concern. *General Electric Co.*, 532 F.2d 359. "The EEOC is not merely a proxy for the victims of discrimination.... When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *General Telephone Co.*, 446 U.S. at 326, 100 S.Ct. 1698.

Although the Separation Agreement at issue in this case came to the EEOC's attention via the charge filed by Elizabeth Salsbury, the EEOC challenges the Separation Agreement as facially retaliatory as to all those who entered into the agreement. (Docket # 1, p. 1). Such a claim need not be based on conduct directed at a particular person when the basis of the complaint is a policy applicable to a large group, as is the case here. "It would be inappropriate to suggest that each member of the protected class file an individual—disparate—treatment claim pursuant to the *McDonnell Douglas Corp. v. Green* burden shifting method because the adverse employment action stemmed from a discriminatory policy, not an individual decision." *EEOC v. Board of Governors of State Colleges and Universities*, 957 F.2d 424, 431 (7th Cir.1992) (discussed *infra* p. 834) (citation omitted). The EEOC seeks injunctive relief to prohibit SunDance from enforcing its Separation Agreement and to provide reformed agreements to Elizabeth Salsbury and other similarly situated employees. (Docket # 1, p. 6–7). Clearly, this case exemplifies those circumstances in which the EEOC acts on behalf of a group of people for the public interest, albeit at the prompting of an individual.

Based on the above reasoning, Part II.A. of the R & R is not adopted.

## B. *Facially retaliatory policy*

The EEOC argues that SunDance's Separation Agreement, on its face, is a per se violation of the anti-retaliation provisions of the ADEA, ADA, EPA, and Title VII. SunDance claims that "[w]hile the EEOC's retaliation claims are framed under four distinct statutes, the legal analysis for each is identical." (Docket # 24, p. 4). The EEOC agrees the retaliation provisions of each statute are similar but suggests that the ADA provision is more broad. (Docket # 25, p. 6). The relevant provisions of each statute are:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment..., because such individual... has opposed any practice made unlawful by this section, or because such individual... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

Section 4(d) of the Age Discrimination in Employment Act, 29 U.S.C. sec. 623(d).

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

Section 503 of the Americans with Disabilities Act, 42 U.S.C. sec. 12203(a).

> ...[I]t shall be unlawful for any person to violate any of the provisions of section 206 or section 207 of this title, or any of the provisions of any regulation or order of the Secretary issued under section 214 of this title.

Section 15(a)(2) of the Fair Labor Standards Act, 29 U.S.C. sec. 215(a)(2).

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment..., to discriminate against any individual, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Section 704(a) of Title VII, 42 U.S.C. sec. 2000e–3(a). Given the parties agreement that under the most narrow interpretation of these statutes the analysis of a retaliation claim is the same, the Court will treat them similarly in the following analysis. (Docket #24, p. 4; Docket #25, p. 6).

The EEOC does not claim that SunDance's Agreement is facially discriminatory, nor could it claim so, since the policy is facially neutral—it neither treats employees with protected traits (e.g.—race, sex, age, etc.) differently because of such traits, nor is there evidence in this case that it had a disparate impact upon employees with protected traits. *See DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719 (3rd Cir.1995) (for a discussion of facially discriminatory policy). Instead, the EEOC argues that the Separation Agreement is itself facially retaliatory, in violation of the retaliation provisions of the anti-discrimination statutes at issue here.

An employment policy can, as the EEOC suggests, constitute impermissible retaliation on its face. The Seventh Circuit addressed the question of whether a retaliatory policy constitutes a per se violation of Section 4(d) of the ADEA and held that it does. *Board of Governors*, 957 F.2d 424. In *Board of Governors*, an employee signed a collective bargaining agreement that required an employee to forfeit administrative or judicial resolution of a grievance in order to participate in the internal grievance procedure. *Id.* at 426. The district court held that "the collective bargaining agreement constituted a prima facie case of forbidden retaliation under Section 4(d) of the ADEA." *Id.* at 427. The Seventh Circuit determined that an employee had a contractual right to an in-house grievance procedure, and that the collective bargaining agreement authorized adverse employment action in that the grievance procedure could be terminated because the employee engaged in protected activity, i.e. filing an ADEA claim. *Id.* at 429–30. Therefore, the court affirmed the district court decision that the collective bargaining agreement was discriminatory on its face.[6] *Id.* at 431.

SunDance asserts that its Separation Agreement is a valid contract between an employee and SunDance. Several cases in the Sixth Circuit and elsewhere have upheld knowing and voluntary waivers of an employee's discrimination claims. For example, the Sixth Circuit considered a waiver signed by a terminated employee as part of a severance payment plan and held "[p]roperly executed waivers of possible employment-related discrimination claims knowingly and voluntarily made between an employee and his employer will be enforced absent the typical exceptions for

---

6. In *Board of Governors,* the court explained that "[e]ven though the explicit language in Section 4(d) prohibits 'discrimination,' this Court has referred to Section 4(d) claims as 'retaliation' claims.... [W]e use the terms as a shorthand way to distinguish substantive age discrimination claims from claims of discrimination based on the exercise of legal rights granted by the ADEA." 957 F.2d at 427. Although the *Board of Governors* court referred to the latter situation as "discrimination" and "retaliation" interchangeably, this Court refers to the issue before it only as retaliation.

fraud, duress, lack of consideration or mutual mistake." *Shaheen v. The B.F. Goodrich Co.*, 873 F.2d at 105, 107 (6th Cir. 1989). Similarly, a general release of employment claims was a valid, knowing and voluntary waiver in *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir.1995). *See also Runyan v. National Cash Register Corp.*, 787 F.2d 1039 at 1044–1045 (6th Cir.1986) ("We have decided that under particular circumstances employers and employees may negotiate a valid release of ADEA claims.").

The EEOC argues these cases address waivers of the right to file a lawsuit or bring a claim, but not the right to file charges with the EEOC, which is at issue here. Although the distinction appears slight, case law and legislative history suggest the EEOC rightly emphasizes its significance. In *EEOC v. Cosmair*, an employee signed a release waiving his right to file any claims dealing with discrimination in exchange for severance benefits. 821 F.2d 1085, 1087 (5th Cir.1987). When the employee then filed a charge with the EEOC, the employer discontinued his severance benefits. *Id.* at 1087. The EEOC claimed such discontinuation of benefits constituted unlawful retaliation while the employer argued it merely suspended performance of its duties after the employee breached the agreement. *Id.* The court held that the employee did not breach his contract by filing a charge with the EEOC because the release did not obligate him not to file a charge. *Id.* at 1089. The court then extrapolated on the difference between waiving the right to take legal action versus the right to file a charge:

> Through the release, Terry waived "all actions, causes of action, claims and demands whatsoever." Actions, causes of

action, claims, and demands all entail the seeking of "one's own" from another. The purpose of a charge, however, is not to seek recovery from the employer but rather to inform the EEOC of possible discrimination. As the Supreme Court stated in *EEOC v. Shell Oil Co.*, "[A] charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit. The function of the [ADEA] charge, rather, is to place the EEOC on notice that someone ... believes that an employer has violated the [Act]. Indeed, charges can be filed by persons other than the employee who allegedly suffered from discrimination."

*EEOC v. Cosmair*, 821 F.2d at 1089 (citations omitted). In addition, the employer expressed at oral argument its intention that the release include a waiver of the right to file a charge. *Id.* The court responded that private interest in settlement of disputes is outweighed by the public interest in EEOC enforcement of the ADEA. *Id.* at 1090. Therefore, the court explicitly held "that an employer and an employee cannot agree to deny to the EEOC the information it needs to advance this public interest. A waiver of the right to file a charge is void as against public policy." *Id.*

The Third Circuit also recognized as significant the difference between the right to bring a lawsuit and the right to file a charge with the EEOC in a case interpreting 29 U.S.C. sec. 626(f)(4).[7] The court enforced a release agreement precluding an employee from filing an age discrimination suit against his former employer while holding void the portion of the release prohibiting the employee from filing a charge with the EEOC. *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 289–

---

**7.** "No waiver agreement may affect the Commission's rights and responsibilities to enforce this chapter. No waiver may be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the Commission." 29 U.S.C. sec. 626(f)(4).

93 (3rd Cir.2003) ("[A]ny attempt by an employer to enforce a contractual provision prohibiting an employee from filing a charge or participating in an EEOC investigation would be ineffectual."). In the court's reasoning, it explicitly relied on *Cosmair's* distinction between waiving a right to file a lawsuit versus an EEOC charge. *Id.* at 291.

The Third Circuit, as well as this Court, find *Cosmair* persuasive in light of the legislative history explicitly endorsing its holding. The Senate Report on the Older Workers Benefit Protection Act which amended the ADEA, under the heading "Right to Participate in EEOC Proceedings," states:

> The legislation provides that a waiver may not interfere with the EEOC's rights and responsibilities to enforce the ADEA, nor may such a waiver be used to interfere with the employee's protected right to file a charge or to participate in an EEOC investigation or proceeding. The Committee intends this provision as a clear statement of support for the principle that the elimination of age discrimination in the workplace is a matter of public as well as private interest. No waiver agreement may be permitted to interfere with the achievement of that goal. This position is consistent with the holding and reasoning of *EEOC v. Cosmair, Inc.,* 821 F.2d 1085 (5th Cir. 1987). An employee may validly waive the right to recover in his own lawsuit as well as the right to recover in a suit brought by the Commission on his own behalf.

1990 U.S.C.C.A.N. 1509, 1541.

Finally, the EEOC also relies on its own Enforcement Guidance as evidence of the facially retaliatory nature of SunDance's Separation Agreement. This Court dis-

agrees with the R & R that such administrative interpretation is entitled to respect only to the extent that the Enforcement Guidance is persuasive. (Docket # 39, p. 8). The Sixth Circuit has indicated that courts must consider the EEOC's interpretation of the statutes it is charged with enforcing and when the court disagrees with a reasonable interpretation of the Commission, the court must explain its basis for doing so. *McKay v. Toyota Motor Manufacturing, U.S.A., Inc.,* 110 F.3d 369, 375–76 (6th Cir.1997).

> "[When] Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."

*Id.* at 376 (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). *See also Harris v. H & W Contracting Co.,* 102 F.3d 516, 521 (11th Cir.1996) (holding that *Chevron* standard must be applied to EEOC regulations and Interpretive Guidance issued for the ADA).

■ In the case before this Court, the EEOC asserts that SunDance's Separation Agreement is facially retaliatory because "[a]greement signers may not file discrimination charges [except] on pain of suit for return of severance, damages, fees and cost." (Docket # 27, p. 4). SunDance's primary response to this assertion is that the waiver in its Separation Agreement must be valid because the EEOC cannot establish a prima facie case of retaliation.[8]

---

**8.** SunDance relies throughout its pleadings on the fact that Ms. Salsbury did not engage in protected activity prior to receiving the

Separation Agreement and that SunDance did not take any adverse employment action be-

(Docket # 24, p. 5–7 and Docket # 35, p. 3–5). SunDance did not respond directly to the distinction highlighted by the EEOC between waiving a right to bring a lawsuit and waiving a right to file a charge with the EEOC. Instead, SunDance attempted to distinguish *Cosmair*, the primary case supporting this point, by pointing to other aspects of the decision. (Docket # 28, p. 3–6). Even though case law addressing employees' waivers of their right to bring a discrimination lawsuit against an employer appears to support SunDance's position that the waiver included in its Separation Agreement is valid, (*see supra* p. 833–34), the EEOC's argument and *Cosmair* demand attention.

SunDance attempted to distinguish *Cosmair* by pointing out that in that case, the "employer discontinued severance payments upon the actual filing of a charge—clear retaliatory causation." (Docket # 28, p. 4). SunDance argues the court in *Cosmair* considered more than the policy's mere existence, which is all that this Court has before it. Finally, SunDance argues that *Cosmair* held the waiver of the right to file a charge with the EEOC was void as against public policy, which does not apply to this case based only on claims of retaliation and not on any public policy claim. (Docket # 28, p. 5). Despite the factual differences between *Cosmair* and this case, the reasoning behind the distinction between filing a lawsuit versus filing a charge, and its holding that waiving a right to file a charge is void as against public policy, are instructive.

Furthermore, the thrust of the EEOC's argument is that the SunDance Separation Agreement is facially retaliatory. The EEOC relies significantly on *Board of Governors* to support its assertion. 957 F.2d 424. SunDance fails to persuasively distinguish *Board of Governors* from the facts of this case.

The SunDance Separation Agreement provided that an employee who signed the release may not bring claims "in any administrative, judicial or other forum whatsoever." (Docket # 24, Ex. A –1). If the employee violated the Separation Agreement, SunDance had the right to "seek and obtain injunctive relief and damages in any court of competent jurisdiction from said violation, including the right to the return of [the severance payment]." (Docket # 24, Ex. A–1).

This Separation Agreement is analogous to the collective bargaining agreement found to be facially retaliatory in *Board of Governors*, 957 F.2d 424. In *Board of Governors*, the collective bargaining agreement was a contract entered into by the employee and employer that entitled the employee to participate in a grievance process. By the terms of the agreement, the employee lost his contractual right to participate in the grievance process if the employee filed a charge of discrimination. *Id.* at 429–30. In this case, SunDance's Separation Agreement is a contract entered into by employees entitling them to severance pay. By the terms of the Separation Agreement, the employee loses his contractual right to the severance pay if he files a charge of discrimination. In both cases, the policies at issue allow an employer to deny to an employee a contractu-

---

cause of any alleged protected activity. Docket # 24, p. 5–7; Docket # 28, p. 2–5; and Docket # 35, p. 3–5. SunDance focuses exclusively on rebutting the *McDonnell Douglas* analysis and fails to offer a substantive response to the EEOC's facial retaliation claim. The thrust of the facial retaliation claim is that even before either party takes any action

(engaging in protected activity or adverse employment action), the policy by its terms authorizes the employer to take adverse employment action once an employee does engage in some protected activity. Such authorized retaliation was the issue addressed by the court in *Board of Governors* and is at the heart of the EEOC's claim in this case. 957 F.2d 424.

al right because the employee engaged in protected activity, i.e. filing a charge of discrimination.

SunDance attempted to distinguish *Board of Governors* by the fact that the plaintiff in that case was denied an employment benefit, specifically the right to file a grievance, while in this case severance pay was not an employment benefit because it was conditional rather than automatic. 957 F.2d at 429–30. SunDance ignores the portion of the *Board of Governors* opinion specifically recognizing that even though the employer did not have to offer its employees a contractual right to participate in a grievance process, once it did so, it could not administer the benefit in a discriminatory way.[9] *Id.* at 430. Similarly, although SunDance did not have to offer its terminated employees severance packages, once it decided to do so, it could not do so in a retaliatory manner. In addition, the holding in *Board of Governors* is not based on the adverse action actually taken by the employer, rather the court held the policy was, on its face, impermissibly retaliatory. *Id.* at 429–430.

The EEOC, by this action, "seeks to correct actions taken by SunDance to retaliate against individuals affected by its Separation Agreement because of their right to file an EEOC charge or participate in an EEOC investigation." (Docket # 33, p. 2). The ADEA waiver provision, 29 U.S.C. sec. 626(f)(4), clarifies Congress' intent to allow individuals to waive their right to file a lawsuit but not their right to file a charge with the EEOC. The holdings in *Cosmair*, 821 F.2d at 1089, and *Wastak*, 342 F.3d at 290, make clear that an employer cannot validly require an employee to waive her right to file a charge with the EEOC under the ADEA. This distinction between waiving the right to recover in a lawsuit versus waiving a right to file a charge with the EEOC applies equally in

the context of the other anti-discrimination statutes at issue in this case. The interpretation contained in the EEOC Enforcement Guidance parallels the reasoning in these two cases and is entitled to deference under *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778. Finally, *Board of Governors* makes clear that a policy conditioning an employment benefit on an employee's agreement not to file an EEOC charge constitutes facial retaliation. Therefore, when an employer requires an employee as part of a separation agreement to give up her right to file a charge with the EEOC in exchange for severance benefits, the employer violates the anti-retaliation provisions of the laws enforced by the EEOC. This Court holds that the provision of the SunDance Separation Agreement conditioning severance payments on an employee agreeing not to file a charge with the EEOC is facially retaliatory in violation of the ADA, ADEA, EPA, and Title VII.

The EEOC requested in its prayer for relief a permanent injunction enjoining SunDance from maintaining its Separation Agreement or any agreement which retaliates based on an employee filing a charge with the EEOC. (Docket # 1, p. 6). Given this demand, the Court must consider whether the entire Separation Agreement is unenforceable or merely the portion precluding employees from filing a charge. The validity of waivers of discrimination claims are evaluated according to ordinary contract law principles. *Adams*, 67 F.3d at 583 (citing *Runyan*, 787 F.2d at 1044–45). Therefore, the severability of a contract should also be determined according to contract law principles. Under Ohio law, "[t]he severability of a contract is a question of law and depends upon the intent of the parties.... Whether a contract... is entire or divisible depends generally upon the intention of the parties,

---

9. See discussion of "discrimination" versus "retaliation" *supra,* footnote 6.

and this must be ascertained by the ordinary rules of construction." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, at 674–75 (6th Cir.2003) (citations omitted).

■ The Separation Agreement at issue in this case states, "[i]f any provision of the Release is deemed to be void or unenforceable, both parties agree that the remaining provisions shall be valid and enforceable." (Docket # 24, Ex. A–1). The terms of the Separation Agreement make clear the parties intention that the contract be divisible in this case. In addition, construing the Separation Agreement as divisible comports with the holding by the Third Circuit in *Wastak*. 342 F.3d at 292. In *Wastak*, the Third Circuit held that the employee validly waived his right to bring a claim pursuant to the ADEA even though the portion of the release prohibiting him from filing a charge with the EEOC was invalid. 342 F.3d at 292. Finally, by recognizing as valid the terms of the Separation Agreement other than the waiver of the right to file a charge with the EEOC, this Court follows consistently the Sixth Circuit cases that held valid knowing and voluntary waivers of the right to file a discrimination claim. See *Shaheen*, 873 F.2d at 105, 107; *Adams*, 67 F.3d at 583; and *Runyan*, 787 F.2d at 1044–1045.

Therefore, this Court further holds that SunDance's Separation Agreement remains valid and enforceable except for the provision precluding former employees from filing a charge with the EEOC.

### C. *McDonnell Douglas analysis*

The R & R and defendant SunDance dwell on the EEOC's inability to satisfy the *McDonnell Douglas* burden shifting test by which a plaintiff can establish a prima facie case of discrimination when no direct evidence exists. (Docket 24, p. 4–7; Docket 39, p. 11–15). Given this Court's holding that SunDance's Separation Agreement constitutes facial retaliation to the extent that it conditions severance benefits on an employees promise not to file a charge with the EEOC, there is no need to further explore whether or not the EEOC satisfied the *McDonnell Douglas* test.

### V. Conclusion

Although the EEOC more typically initiates legal actions on behalf of an individual who experienced some targeted discrimination, the Commission is equally responsible for bringing actions for the public good, such as the one in this case, on behalf of a group of people subject to a retaliatory policy.

The Court holds that the SunDance Separation Agreement constitutes facial retaliation in violation of Title VII, 42 U.S.C. sec.2000e–3(a); the EPA, 29 U.S.C. sec. 215(a)(2); the ADEA, 29 U.S.C. sec. 623(d); and the ADA, 42 U.S.C. sec. 12203 to the extent that it conditions employees' severance benefits on their promise not to file a charge with the EEOC. Because only those portions of the Separation Agreement related to the waiver of the right to file a charge with the EEOC are void, the remainder of the Separation Agreement remains valid. Therefore, the Court declines to adopt the R & R, SunDance's motion for summary judgment is denied, and the EEOC's motion for summary judgment is granted.

Accordingly, this Court will order that:

SunDance, its officers, successors, assigns and all persons in active concert or participation with them, be permanently enjoined from engaging in the institution, maintenance and/or management of the portion of the April 1999 SunDance Separation Agreement, or any other similar plan, requiring all employees and former employees to waive their right to file a charge with the EEOC or participate in an EEOC investigation or proceeding; and

SunDance, its officers, successors, assigns and all persons in active concert or participation with them, be permanently

enjoined from retaliating because of an employee or former employee's right to file a charge with the EEOC or participate in an EEOC investigation or proceeding; and

SunDance, its officers, successors, assigns and all persons in active concert or participation with them, forthwith, shall institute and carry out policies, practices and programs which provide equal employment opportunities for employees who wish to file charges with the EEOC or participate in an EEOC investigation or proceeding; and

SunDance, its officers, successors, assigns and all persons in active concert or participation with them, to make whole Elizabeth S. Salsbury and other similarly situated employees. Defendant, forthwith, shall reform the April 1999 SunDance Separation Agreement to expressly permit all employees and former employees to file charges with the EEOC and participate in EEOC investigations or proceedings without losing their severance pay and without violating the Separation Agreement and forthwith, shall pay to Elizabeth S. Salsbury and other similarly situated employees any and all withheld severance pay with prejudgment interest; and

SunDance, its officers, successors, assigns and all persons in active concert or participation with them, shall deliver a corrective notice with a reformed SunDance Separation Agreement to Elizabeth S. Salsbury and similarly situated employees. Moreover, all limitations periods for filing a charge or claim are tolled and will run anew from the date of actual delivery of the reformed notice; and

SunDance shall pay to the EEOC its costs of bringing this action.

IT IS SO ORDERED.