*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0390p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
        *Plaintiff-Appellee,*

   *v.*

No. 04-4178

SUNDANCE REHABILITATION CORPORATION,
        *Defendant-Appellant.*

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-01867—Lesley Brooks Wells, District Judge.

Argued: December 1, 2005

Decided and Filed: October 24, 2006

Before: BOGGS, Chief Judge; BATCHELDER, Circuit Judge; COHN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Dean E. Westman, KASTNER, WESTMAN & WILKINS, Akron, Ohio, for Appellant. Daniel Travis Vail, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee. **ON BRIEF:** Dean E. Westman, Thomas Evan Green, KASTNER, WESTMAN & WILKINS, Akron, Ohio, for Appellant. Daniel Travis Vail, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee. Ann E. Reesman, MCGUINESS, NORRIS & WILLIAMS, Washington, D.C., for Amici Curiae.

    BOGGS, C. J., delivered the opinion of the court in which, BATCHELDER, J., joined. COHN, D. J. (p. 13), delivered a separate dissenting opinion.

_____

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

---------------

**OPINION**

---------------

BOGGS, Chief Judge.  Defendant SunDance Rehabilitation Corporation ("SunDance") appeals the district court's grant of summary judgment in favor of the Equal Employment Opportunity Commission ("EEOC") on cross-motions for summary judgment.  The EEOC sued SunDance under the antiretaliation provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12117(a) and 12203; Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d); Equal Pay Act ("EPA"), 29 U.S.C. § 215(a)(3); and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a), alleging that the separation agreement that SunDance offered to discharged employees in exchange for severance pay not otherwise owed to the employees violates those statutory antiretaliation provisions.  The "Separation Agreement, General Release, and Covenant Not to Sue"  ("Separation Agreement") offers severance pay in exchange for, among other things,  promises not to sue or file an administrative charge and not to make any statement or take any action that would reflect negatively on SunDance.  The Separation Agreement contains a provision whereby SunDance has the right to return of the severance pay, any other damages, and attorneys' fees and costs, in the event of a violation of the agreement's terms by a releasor.

The district court held that the separation agreement constitutes facial retaliation under the antiretaliation statutory provisions to the extent that it conditions severance pay on a promise not to file a charge with the EEOC.  We reverse.

**I**

Elizabeth Salsbury, a speech language pathologist employed by SunDance, was notified by letter from SunDance dated February 26, 1999 that the company was compelled to reduce its workforce and that Salsbury's job would be terminated effective March 1, 1999.  The letter informed Salsbury that she would receive 80 hours' worth of severance pay after signing a separation agreement and general release.  Neither Salsbury nor any other similarly situated employee was otherwise entitled to any amount of severance pay.

On March 5, 1999, SunDance mailed Salsbury a "Separation Agreement, General Release, and Covenant Not to Sue" ("Separation Agreement").  That Separation Agreement, which lies at the heart of this case, states in relevant part:

> 1. *Severance Pay*: Upon the execution of this Release by Elizabeth Salsbury and its delivery to Company, Company will, as full and complete consideration and severance:  pay in one lump sum an amount equal to 80 hours of pay at the base rate . . . .  Releasor promises and agrees not to make any statements or take any actions that would reflect negatively upon the Company or its representatives. Failure of the Releasor to comply with this agreement will result in the immediate repayment by Releasor of the total severance amount to Company as outlined in this paragraph. The parties acknowledge and agree that this severance pay exceeds any and all pay to which Releasor may have been entitled from the Company pursuant to law. . . .
>
> 3. *General Release*:  In consideration of the payment made to Releasor by Company, Releasor . . . does hereby voluntarily and knowingly release and discharge Company . . . from any and all claims, actions, causes of actions, liabilities, demands, rights, damages, costs, attorney fees, expenses and controversies of any kind and description whether known or unknown, fixed or contingent, arising before the execution of this Release through the date of this Release.  This Release and covenant not to sue also expressly, and without any limitation of the foregoing

General Release, includes but is not limited to any claims which Releasor may have or may assert under federal or state law prohibiting employment discrimination and claims growing out of any legal restrictions on the rights of Company to terminate its employees, whether statutory or arising under common law, including without limitation: Title VII of the Civil Rights Act of 1964 . . . [and] the Americans with Disabilities Act . . . . *Releasor on behalf of herself and other releasors expressly agrees that she will not institute, commence, prosecute or otherwise pursue any proceeding*, action, complaint, claim, *charge*, or grievance against Company or any other released parties *in any administrative*, judicial or other *forum whatsoever* with respect to any acts or events occurring prior to the date hereof in the course of Releasor's dealings with Releasee.

6. *Miscellaneous*: The terms of this General Release are contractual and not mere recitals. Releasor acknowledges that before deciding to sign this Release, Releasor had time to review and consider whether to enter into this Release and Releasor had full opportunity to consult with an attorney. . . .

7. *Return of Severance Pay*: Releasor understands and agrees that any violation of the terms of this Agreement may cause irreparable harm and damage to the Company and will seriously interfere with the purpose of this Agreement, which is to accomplish a private, unpublished severance agreement and general release of any and all claims Releasor has or may have against the Company. In the event that the provisions of this Agreement are violated, Releasor agrees that the Company shall have the right to seek and obtain injunctive relief and damages in any court of competent jurisdiction from said violation, including the right to return of the entire amount of the consideration paid by the Company under this Agreement, plus any damages proven, including reasonable attorneys' fees and costs. Releasor further expressly agrees that if any portion of this Agreement and the release incorporated herein is ruled to be unenforceable as the result of a challenge brought by the Releasor to the Agreement's or release's validity, then Releasor shall return to the Company the entire amount of consideration paid hereunder.

8. *Confidentiality*: Releasor agrees to hold strictly in confidence the terms, amount, and fact of this Release. Releasor will not disclose any such information, orally or in writing, to anyone else, including without limitation, any past, present or future employee of Company.

(Emphasis added.) The Separation Agreement also contains, *inter alia*, a statement that if any provision is deemed void or unenforceable, the remaining provisions shall be valid and enforceable, and a declaration that the Separation Agreement is governed by the laws of Ohio.

In an affidavit, Salsbury said that she thought she had been denied a promotion and was laid off by SunDance due to her sex, and wanted to file a charge of sex discrimination with the EEOC. Yet she believed she could not sign the Separation Agreement because it purported to prohibit the filing of a charge with an agency and would have allowed SunDance to sue her for return of the severance payment and for attorneys' fees and costs if she signed the Agreement and subsequently filed a charge with the EEOC. Salsbury called SunDance's Human Resources department at its toll-free number and asked the representative if she could strike the provision that prohibited her from filing a charge with the EEOC and from suing SunDance, and then sign the Separation Agreement. The representative told her that she could not and that any alterations would be null and void. Salsbury replied that "it seemed like the Agreement required me to give up all my civil rights"; the representative told her that "most terminated employees simply signed the form Separation Agreement to get their severance payment." Salsbury decided not to sign the Separation Agreement.

On April 20, 1999, Salsbury filed a charge with the EEOC. In that charge she alleged that she had been denied promotion and was laid off on the basis of her sex in violation of Title VII. She also stated that she had been "asked to sign a separation agreement, general release and covenant not to sue agreement in order to get a lump sum payment of 80 hours. I did not sign this release because I believe it violates the Laws administered by the EEOC."

The EEOC issued a determination dated September 30, 1999, finding no reasonable cause to believe that Salsbury was discriminated against on the basis of sex with respect to the failure to promote or lay-off issues, and informing Salsbury of her right to sue on the sex discrimination allegations. The determination added, however, that the Separation Agreement failed to meet the criteria "as set forth . . . in 29 U.S.C. § 626(f)(1)(A)-(G)" of the ADEA, as amended by the Older Workers' Benefit Protection Act ("OWBPA"), for a knowing and voluntary waiver of a right or claim under the ADEA; it stated that the Separation Agreement violated 29 U.S.C. § 626(f)(1)(C), which requires that an individual "not waive rights or claims that may arise after the date the waiver is executed." "Moreover," the determination continued, the waiver provision in the Separation Agreement "may produce a chilling effect, thereby undermining the Commission's ability to enforce the ADEA, Title VII, the EPA and the ADA." The Separation Agreement's waiver provisions "may intimidate or have the effect of intimidating employees and create disincentives for them to cooperate with the EEOC in safeguarding the public interest."

On February 12, 2000, Salsbury filed a second charge with the EEOC, alleging that SunDance retaliated against her in violation of Title VII by failing to rehire her for subsequent speech language positions, as she claimed it had said it would, because she had filed the earlier charge. To this second charge, the EEOC responded on July 20, 2000, that it had been unable to establish a violation of Title VII and notifying her of her right to sue.

In her affidavit, Salsbury stated that about a year after filing her first charge (which she filed on April 20, 1999), an EEOC investigator told her that "the Separation Agreement's prohibition against charge filing was unlawful." Salsbury then decided to sign the Separation Agreement in order to obtain the severance payment. However, by the time she signed the Separation Agreement in March 2000, SunDance had gone bankrupt. She states that she has not received the severance pay. *In toto*, slightly over one hundred Ohio employees of SunDance were laid off in the reduction in force; all of those received the offer of severance pay in exchange for signing the Separation Agreement; ten, including Salsbury, did not sign the Separation Agreement at that time and did not receive the severance pay.

On August 1, 2001, the EEOC filed suit against SunDance in the U.S. District Court for the Northern District of Ohio, alleging violations of the antiretaliation provisions of ADEA, ADA, EPA, and Title VII. The complaint stated that the EEOC had brought suit "to correct actions undertaken by Defendant to retaliate against individuals affected by the Defendant's Separation Agreement, General Release and Covenant Not to Sue, because of their right to file a charge with the EEOC or participate in an EEOC investigation or proceeding."[1]

The relief sought by the EEOC included a permanent injunction against SunDance to prevent it from instituting or maintaining the Separation Agreement or any similar plan that "retaliates because of an employee's right to file a charge with the EEOC or participate in an EEOC investigation or proceeding"; an order requiring SunDance to reform the Separation Agreement expressly to permit employees to file charges with the EEOC and participate in EEOC investigations or proceedings without losing severance pay and without violating the agreement; and a corrective

---

[1] In its complaint the EEOC did not raise any issue involving the OWBPA.

notice with a reformed Separation Agreement sent to Salsbury and similarly situated former employees.

On cross-motions for summary judgment, a magistrate judge recommended granting summary judgment in favor of SunDance. The district court declined to adopt the magistrate judge's report and recommendation, and instead granted summary judgment to the EEOC. *EEOC v. SunDance Rehabilitation Corporation*, 328 F. Supp. 2d 826, 828 (N.D. Ohio 2004).

The district court concluded that the Separation Agreement's conditioning severance pay on a ban on filing charges with the EEOC constituted facial retaliation in violation of ADA, ADEA, EPA, and Title VII. *Id*. at 838. Applying Ohio law to the question of severability, the district court held that with the exception of the charge-filing ban, the Separation Agreement remained valid and enforceable. *Id*. at 839.

In light of its holding that the Separation Agreement "constitutes facial retaliation to the extent that it conditions severance benefits on an employees [sic] promise not to file a charge with the EEOC," the district court found no need to determine whether the EEOC could show a prima facie case of retaliation in the absence of direct evidence under the *McDonnell Douglas* burden-shifting framework–which SunDance argued the EEOC could not do. The district court ordered that SunDance (and its officers, successors, etc.):

> [Are] permanently enjoined from engaging in the institution, maintenance and/or management of the portion of the April 1999 SunDance Separation Agreement, or any other similar plan, requiring all employees and former employees to waive their right to file a charge with the EEOC or participate in an EEOC investigation or proceeding; and

> [Are] permanently enjoined from retaliating because of an employee or former employee's right to file a charge with the EEOC or participate in an EEOC investigation or proceeding; and

> [F]orthwith, shall institute and carry out policies, practices and programs which provide equal employment opportunities for employees who wish to file charges with the EEOC or participate in an EEOC investigation or proceeding; and

> [S]hall make whole . . . Salsbury and other similarly situated employees; [and] shall reform the April 1999 SunDance Separation Agreement to expressly permit all employees and former employees to file charges with the EEOC and participate in EEOC investigations or proceedings without losing their severance pay and without violating the Separation Agreement and forthwith, shall pay to . . . Salsbury and other similarly situated employees any and all withheld severance pay with prejudgment interest; and

> [S]hall deliver a corrective notice with a reformed SunDance Separation Agreement to . . . Salsbury and similarly situated employees. Moreover, all limitations periods for filing a charge or claim are tolled and will run anew from the date of actual delivery of the reformed notice; and

> [S]hall pay to the EEOC its costs of bringing this action.

On appeal, SunDance argues that the antiretaliation provisions of ADA, ADEA, EPA, and Title VII do not provide for or recognize "facially retaliatory" conduct by employers; that the EEOC

had not proved a prima facie case of retaliation under any of the applicable statutes; and that the district court abused its discretion in its award of injunctive relief.

## II

This court reviews *de novo* a district court's grant of summary judgment, applying the same legal standard as the court below. *United States v. Dairy Farmers of America, Inc*., 426 F.3d 850, 856 (6th Cir. 2005). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III

### A

The EEOC argues that the Separation Agreement constitutes a *per se* violation of the antiretaliation provisions of Title VII, EPA, ADA, and ADEA. The relevant statutory provisions are as follows:

Title VII, 42 U.S.C. § 2000e-3(a):

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

EPA, 29 U.S.C. § 215(a)(3):

> (a) . . . it shall be unlawful for any person--
>
>  . . . .
>
> (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . .

ADA, 42 U.S.C. § 12203(a) & (b):

> (a)
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> (b)
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

ADEA, 29 U.S.C. § 623(d):

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

## B

The EEOC asserts that SunDance's offer of the Separation Agreement in exchange for severance payments to Salsbury and other terminated employees amounts to a violation of the antiretaliation provisions on the ground that the Separation Agreement is a "preemptive strike against future protected activity." The Separation Agreement conditions severance pay on promises from the terminated employee not to file charges with the EEOC and, according to the EEOC's interpretation, not to participate in EEOC proceedings, and then allows SunDance to sue for the return of the payments if the former employee engages in such protected activity. The EEOC argues that the Separation Agreement itself constitutes a per se violation of the antiretaliation provisions.

In support of that argument, the EEOC relies heavily on *EEOC v. Bd. of Governors of State Colls. and Univs.*, 957 F.2d 424 (7th Cir. 1992), which it points to as the only circuit court opinion to address squarely the legality of what it calls a "preemptive retaliatory policy." In that case, a collective bargaining agreement ("CBA") gave employees a contractual right to an in-house grievance procedure. *Id.* at 429. However, a provision of the CBA allowed the employer to terminate an internal grievance proceeding if an employee sought resolution of the matter in any other forum, or to refuse to entertain the grievance if the employee pursued the matter in another forum before initiating an internal grievance. An employee filed a grievance with the union. While that grievance was being processed, the employee filed a charge with the EEOC, alleging age discrimination. The employer, implementing the policy embodied in the collective bargaining agreement, terminated the grievance proceeding as a result of the employee's filing a charge with the EEOC. *Id.* at 426. The EEOC brought suit against the employer, alleging violation of the antiretaliation provision of the ADEA, 29 U.S.C. § 623(d). *Ibid.*

In its *Board of Governors* opinion, the Seventh Circuit noted that the CBA provision at issue authorized the employer to "take an adverse action (termination of the in-house grievance proceeding) for the sole reason that the employee has engaged in protected activity (filing an ADEA claim)." 957 F.2d at 430. It held that the provision "violates Section 4(d) [29 U.S.C. § 623(d)] with respect to ADEA claimants . . . because it is discriminatory on its face." *Id.* at 431. In so doing, the Seventh Circuit rejected the employer's argument that it was free to terminate the grievance process since it had no obligation to provide such a process in the first place. In dismissing that argument the Seventh Circuit looked to the Supreme Court case *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984), a Title VII sex discrimination case. In *Hishon*, the Court stated that

> A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all. Those benefits that comprise the "incidents of employment," . . . or that form "an aspect of the relationship between the employer and employees," . . . may not be afforded in a manner contrary to Title VII.

*Id.* at 75-76.

We do not find the Seventh Circuit's *Board of Governors* opinion to be compelling precedent with respect to this case. In *Board of Governors*, the employer actually took an adverse action

against the employee because the employee had pursued the statutorily protected activity of filing a charge with the EEOC. That action clearly constituted retaliation in violation of 29 U.S.C. § 623(d). While the Seventh Circuit addressed what it determined to be the facially retaliatory CBA provision that purported to authorize that action, that policy was before the Seventh Circuit because the employer had implemented it and had engaged in a retaliatory act. Here, SunDance has offered a contract, and, on the record before us, has engaged in no further action.

Courts have held that prohibitions on filing charges with the EEOC are void and unenforceable as against public policy. The seminal case is *EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085 (5th Cir. 1987). In *Cosmair*, the employer terminated Terry, an employee, after which it offered severance benefits in exchange for a release of claims. Terry signed the release, and subsequently filed a charge with the EEOC alleging age discrimination. Cosmair discontinued severance benefits to Terry as a result of his having filed the charge. *Id*. at 1087. The Fifth Circuit found that the employer had retaliated against Terry under ADEA by discontinuing payments to him, and that the release he had signed did not prohibit the filing of charges with the EEOC. *Id*. at 1089.

In response to Cosmair's argument that the release did in fact bar Terry from filing a charge with the EEOC, the Fifth Circuit held, in the alternative, that "a waiver of the right to file a charge is void as against public policy." The Fifth Circuit stated that "[t]he purpose of a charge . . . is not to seek recovery from the employer but rather to inform the EEOC of possible discrimination." *Id*. at 1090. The court continued:

> Allowing the filing of charges to be obstructed by enforcing a waiver of the right to file a charge could impede EEOC enforcement of the civil rights laws. The EEOC depends on the filing of charges to notify it of possible discrimination. *EEOC v. Shell Oil Co.*, 466 U.S. [54, 69 (1984)] . . . . A charge not only informs the EEOC of discrimination against the employee who files the charge or on whose behalf it is filed, but also may identify other unlawful company actions.

*Ibid*. The Fifth Circuit added that while an employee could not waive her right to file a charge with the EEOC, she could waive the right to recover in her own lawsuit, and that the waiver of a right to file a cause of action was not invalid because it was conjoined with a void waiver of the right to file a charge.[2] *Id*. at 1091.

This Circuit has noted approvingly the Fifth Circuit's rule that a waiver of the right to file a charge with the EEOC is void as against public policy. *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999) ("courts have observed that an individual may not contract away her right to file a charge with the EEOC, as such contracts are void as against public policy.") (citing *Cosmair*, 821 F.2d 1085, 1090). The First Circuit declined to decide whether a charge-filing ban was void as against public policy in *EEOC v. Astra*, 94 F.3d 738, 746 (1st Cir. 1996), a Title VII case, but in a subsequent ADEA/OWBPA case, *American Airlines, Inc. v. Cardoza-Rodriguez*, 133 F.3d 111, 118 n.7 (1st Cir. 1998), that circuit cited *Cosmair* for the proposition that an employee could not waive the right to file a charge with the EEOC.

There can be little doubt that the filing of charges and participation by employees in EEOC proceedings are instrumental to the EEOC's fulfilling its investigatory and enforcement missions. Under Title VII and ADA, the EEOC can only investigate discrimination upon a charge being filed.

---

[2]The validity of waivers of ADEA rights is governed by the OWBPA, 29 U.S.C. § 626, enacted after the Fifth Circuit's decision in *Cosmair*. *See generally Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426-27 (1998); *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 288-95 (3d Cir. 2003).

*See* 42 U.S.C. § 2000e-5(b); 42 U.S.C. § 12117(a); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984). The EEOC is not so restricted under ADEA and EPA. *See* 29 U.S.C. § 626(a); 29 U.S.C. § 211.

A charge filed with the EEOC is not a complaint seeking relief. Rather it informs the EEOC of possible employment discrimination. *See Shell Oil*, 466 U.S. at 68 (a Title VII case). Under Title VII, for example, the filing of a charge allows the EEOC to investigate the alleged discrimination, and thereafter to bring a civil action against non-government employers; only if the EEOC does not bring its own suit, and the aggrieved party receives a right-to-sue letter, may the aggrieved party bring a private suit. *See* 42 U.S.C. § 2000e-5; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291-92 (2002); *Frank's Nursery & Crafts*, 177 F.3d at 455-59.

This court has upheld employees' waivers of claims under ADEA, EPA, and Title VII where the waiver was executed voluntarily and intelligently. *See, e.g., Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir. 1995); *Shaheen v. B.F.Goodrich Co.*, 873 F.2d 105, 107 (6th Cir. 1989) (under pre-OWBPA law). The EEOC acknowledged in oral argument, as it does in its Enforcement Guidance on Non-Waivable Employee Rights under EEOC Enforced Statutes, EEOC Notice 915.002, at III.C. (Apr. 10, 1997), that employees can validly waive claims under the employment discrimination laws. Whether a waiver of the right to file a *charge* with the EEOC is enforceable, however, is a different question. Given the importance of charge-filing to the EEOC's investigatory and enforcement responsibilities, particularly under Title VII and ADA, as well as the rule set out in the Fifth Circuit's *Cosmair*, it may be that the charge-filing ban in the Separation Agreement at issue here is unenforceable. If so, SunDance would be unable to recover if it attempted to sue under the Separation Agreement after paying severance to a former employee who had signed the Agreement and then filed a charge with the EEOC.

But we need not rule on the enforceability of the Separation Agreement or any of its specific provisions, because that question is not before this court. The EEOC argues that offering the Separation Agreement itself amounts to *retaliation* under ADA, ADEA, EPA, and Title VII. To support its argument that the Separation Agreement constitutes a per se violation of the antiretaliation provisions of those statutes, the EEOC points primarily to the Seventh Circuit's opinion in *Board of Governors*, which we have already explained to be factually distinguishable and inapplicable to this case. The EEOC also points to its Enforcement Guidance on Non-Waivable Employee Rights, EEOC Notice 915.002. In addition to stating that promises not to file a charge or participate in EEOC proceedings are unenforceable as against public policy, that Enforcement Guidance adds that "[a]greements extracting such promises from employees may also amount to separate and discrete violations of the anti-retaliation provisions of the civil rights statutes." *Id.* at II. The EEOC elaborates by explaining that such agreements chill employees' willingness and ability to provide information to the EEOC. The Enforcement Guidance cites, *inter alia*, *Board of Governors* and *Cosmair*. *Id.* at III.B.

As the EEOC acknowledges, its Enforcement Guidance is entitled to respect only to the extent of its persuasive power. The Enforcement Guidance does not receive *Chevron*-type deference pursuant to *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 843 (1984). *See White v. Burlington Northern & Santa Fe Ry. Co.*, 364 F.3d 789, 812 (6th Cir. 2004) (en banc) (EEOC guidelines in a Compliance Manual "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.") (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986), which in turn quotes *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). *See also Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 n.6 (2002) ("[W]e have held that the EEOC's interpretive guidelines do not receive *Chevron* deference.") (citations omitted); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (stating that interpretations contained in enforcement guidances lack the force of law and do not warrant *Chevron*-style deference; they "are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 . . . (1940), but only to the extent that those interpretations have the 'power to persuade,' *ibid*.").

The Supreme Court, in *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), a case in which the Court held that the protections of Title VII's antiretaliation provision extended to former employees, noted that one of the primary purposes of antiretaliation provisions is "[m]aintaining unfettered access to statutory remedial mechanisms." *Id*. at 346. Similarly, this court, in *EEOC v. Ohio Edison Co.*, 7 F.3d 541 (6th Cir. 1993), stated that a majority of courts have been willing to construe Title VII and the antiretaliatory provisions of the EPA and ADEA broadly, "in order not to frustrate the purpose of these Acts, which is to prevent fear of economic retaliation from inducing employees 'quietly to accept [unlawful] conditions.'" *Id*. at 544.

Keeping those statutory purposes in mind, we are not persuaded by the EEOC's argument that SunDance's mere offer of the Separation Agreement to all employees terminated in the reduction in force, without more, amounts to facial retaliation under the four statutes at issue here. The language of the Separation Agreement probably does not prevent mere participation in EEOC proceedings, and is unenforceable if it does. And, as we have noted, the charge-filing ban may be unenforceable; but its inclusion in the Separation Agreement does not make SunDance's offering that Agreement in and of itself *retaliatory*.

In sum, the employees of SunDance have not been deprived of anything by the offering of the Separation Agreement. Those who choose to accept it are better off, by receiving a benefit that was not "part and parcel of the employment relationship," as was the case in *Hishon* where the failure to provide that benefit led to the successful discrimination charge. Those employees who reject the agreement obviously do not give up any rights. And, as we have noted above, employees may, if they wish, accept the agreement and argue later that parts of it may be unenforceable under existing or expanded precedent. Under these circumstances, simply offering the Agreement is not facially discriminatory. Accordingly we reject the EEOC's argument that SunDance's Separation Agreement amounts to a facial violation of the antiretaliation provisions of the equal employment opportunity statutes.

## C

The EEOC is also unable to establish a prima facie case of retaliation under the *McDonnell-Douglas* burden-shifting framework, which it acknowledges is the "more traditional" retaliation analysis. That analysis requires that the plaintiff, in the absence of direct evidence of retaliation, establish a prima facie case of retaliation by showing that: 1) the employee engaged in protected activity; 2) the employer knew of the protected activity; 3) the employer thereafter took an adverse employment action; 4) there is a causal connection between the protected activity and the adverse action. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 562-65 (6th Cir. 2004) (Title VII); *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002) (ADEA); *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 814-15 (6th Cir. 1999) (ADA).

With respect to the first part, Salsbury engaged in no protected activity prior to receiving the Separation Agreement from SunDance. The EEOC argues that Salsbury's protected conduct was opposition, as she asked SunDance's human resources representative if she could strike the charge-filing ban and waiver of claims because she thought they required her to give up her civil rights. The EEOC then asserts that, with knowledge and because of her opposition, SunDance took the adverse action of refusing to pay Salsbury severance benefits.

Even if Salsbury's statements to the human resources representative did amount to protected activity (a dubious proposition, as the "opposition" would only have been the personal declining of an offered contract), and SunDance knew of that protected activity, Salsbury suffered no adverse employment action when SunDance did not pay her the severance benefits, to which she was not otherwise entitled, when she refused to sign the Separation Agreement. This court has defined an adverse employment action as a "materially adverse change in the terms and conditions of

[plaintiff's] employment." *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). "Examples of adverse employment actions include firing, failure to promote, reassignment with significantly lower responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation." *Smith v. City of Salem*, 378 F.3d at 575-76 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Several courts have found that declining to pay severance or settlement amounts (not otherwise due) when an employee refused to sign a waiver or release does not amount to an adverse employment action in the retaliation context. *Davis v. Precoat Metals*, 328 F. Supp. 2d 847, 849, 852-53 (N.D. Ill. 2004); *Barriera v. Bankers Trust*, No. 98 Civ. 3641, 2003 WL 22387099, at *8 (S.D.N.Y. Oct. 20, 2003) (unpublished); *Hansen v. Vanderbilt Univ.*, 961 F. Supp. 1149, 1153 (M.D. Tenn. 1997); *Jackson v. Lyons Falls Pulp & Paper, Inc.*, 865 F. Supp. 87, 94-95 (N.D.N.Y. 1994). *See also Miller v. Eby Realty Group*, 241 F. Supp. 2d 1247, 1255-57 (D. Kan. 2003) (employer's withdrawal of offer of severance payments beyond those to which employee already due, after employee informed employee he had hired an attorney to investigate age discrimination, was not an adverse action). *Cf. Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 641-43 (7th Cir. 2004) (holding that former employer's denial of consulting work to former employee after former employee filed charge with EEOC, where that work had been promised him in severance package agreed to by parties, sufficient to state retaliation claim under ADA and ADEA); *Bernstein v. The St. Paul Cos., Inc.*, 134 F. Supp. 2d 730, 733-34, 741 (D. Md. 2001) (holding that a jury could find retaliation where the employee had been unconditionally promised a certain amount of severance pay but was then told that he could only receive the pay if he withdrew his charge filed with the EEOC and released the employer from other claims, which he refused to do). SunDance's refusal to pay Salsbury severance pay that she was otherwise not due or promised when she did not sign the Separation Agreement left her in the same position that she had been in before the offer of the free-standing Separation Agreement. This was not a benefit given or owed to all employees, that was then withdrawn because of some protected conduct. As such, Salsbury was not adversely affected, and on these facts the denial of severance pay was not an adverse action for the purposes of the retaliation analysis.

The cases the EEOC cites in support of its argument that the denial of severance benefits in this case amounted to an adverse action are inapposite. In *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 802 (6th Cir. 2004) (en banc), *aff'd*, 126 S. Ct. 2405 (2006), this court stated that taking away an employee's paycheck for over a month, if motivated by discriminatory intent, constituted an adverse employment action for purposes of the Title VII retaliation analysis. Similarly, in *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223-24 (2d Cir. 2001), the Second Circuit held that suspension for a week without pay, even where the employee was later reimbursed, was an adverse action, because the employee had lost the use of the wages for the period before reimbursement. In those instances the employer's action adversely affected the employee; that was not the case here.

Finally, the EEOC has presented no evidence that SunDance declined to pay severance pay to Salsbury because of her opposition as expressed to the human resources representative, rather than simply because she failed to sign the agreement; SunDance offered the Separation Agreement to other employees terminated in the reduction-in-force, and evidently did not pay severance to any of those who refused to sign the Agreement, including Salsbury. Accordingly, the EEOC has not shown causation. *See Cronin v. ITT Corp.*, 737 F. Supp. 224 (S.D.N.Y. 1990), *aff'd*, 916 F.2d 709 (2d Cir. 1990).

Because the EEOC has not shown a prima facie case of retaliation, we need not proceed with the rest of the burden-shifting analysis.

**IV**

Our decision in this case is a narrow one.  SunDance's mere offer of the Separation Agreement does not amount to retaliation under ADA, ADEA, EPA, or Title VII, either as a facial violation of those statutes' antiretaliation provisions or under the conventional burden-shifting analysis.  SunDance has not tried to enforce the Separation Agreement, and the question of the enforceability of the Agreement or any of its provisions is not before us.

The decision of the district court is reversed.  We therefore need not consider SunDance's argument regarding the scope of the injunction issued by the district court.

---

**DISSENT**

---

COHN, District Judge, dissenting.  I dissent.  The distinction the majority opinion makes between facial retaliation and what is surely intimidation cuts too fine a line.  The majority in effect says that an employee who believes he or she has an EEOC enforceable claim or at a minimum is willing to testify in an EEOC enforcement action should sign the agreement, take the money and then go forward with the EEOC.  If SunDance sues for a return of the severance pay, then the defense of retaliation should be raised and may carry the day.

Any act by an employer which interferes with or chills a protected right is, I believe, contrary to public policy and in violation of the anti-retaliation provisions of the several statutes involved.  The reasons for this conclusion are adequately supported by the district court's decision and the EEOC Notice No. 915.002 issued April 10, 1997, "Enforcement Guidance on Non-Waiveable Employee Rights Under Equal Employment Opportunity Enforcement Statutes," and no further elaboration is necessary.