DISSENT
JULIA SMITH GIBBONS, Circuit Judge,
dissenting.
In this appeal, we are asked to determine whether Joyce Watford suffered an adverse employment action for the purposes of establishing retaliation under Title VII and the Age Discrimination in Employment Act (ADEA). The alleged adverse action is a decision by the Jefferson County Board of Education (the Board) to stay her grievance proceedings after she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) (Count IV) and again after she filed suit in federal court (Count V). The Board did so in accordance with the terms of a collective-bargaining agreement (CBA) that governed the terms of Wat-ford’s employment. The majority concludes not only that the Board’s actions constituted an adverse employment action but also that the CBA is facially retaliatory. It does so, in part, by treating the resolution of Watford’s claims as a natural and logical extension of our decision in EEOC v. Sundance Rehabilitation Corp., 466 F.3d 490 (6th Cir. 2006). I disagree with the weight of authority placed on *456 Sundance, the conclusion- that Watford suffered an adverse employment action, and the finding that the CBA is facially retaliatory. I would affirm the district court’s grant of summary judgment by finding, as a matter of law, that staying a grievance when an employee files an EEOC charge or discrimination lawsuit does not constitute retaliation under Title VII or the ADEA. Therefore, I respectfully dissent.
I.
The majority begins with an assumption that the district court’s grant of summary judgment is inconsistent with our decision in Sundance. It cites Sundance for the proposition that terminating grievance proceedings because an employee files' an EEOC charge clearly constitutes retaliation. Although the Sundance court did opine that terminating grievance proceedings constitutes an adverse employment action, the entire discussion is dicta,
Sundance involved an EEOC challenge to the terms of an employer’s separation agreement. 466 F.3d at 495. The EEOC argued that the agreement was “facially” or “per se” retaliatory because it condi-' tioned benefits on a promise not to file an EEOC charge against the employer. Id. at 495-96. The court addressed this argument, in part, by looking to EEOC v. Board of Governors of State Colleges & Universities, 957 F.2d 424 (7th Cir. 1992), which involved a CBA provision allowing-an employer to terminate grievance proceedings if the employee sought relief in any other forum. See Sundance, 466 F.3d at 497-98. The Sundance court opined that this constitutes an adverse action and was clearly retaliation because the grievance proceedings were terminated when the plaintiff filed- an EEOC charge. Id. The court, however, concluded that Board of Governors was not .“compelling precedent with respect to [the] case.” Id. It distinguished Board of Governors as-involving a policy that was actually enforced, whereas the employer in Sundance had only offered a contract with a problematic term. Id. The court emphasized that Board of Governors was “factually distinguishable and inapplicable to this case.” Id. at 500-01. It ultimately concluded that offering the agreement was not retaliatory without reaching the question of whether the provision, itself, constituted retaliation. Id. at 500-01. For this reason, Sundance does not control our decision here. Instead, we are faced with an issue -of first impression.
Additionally,. even if Sundance were directly applicable in this case, its analysis does not compel the majority’s conclusion. The Board of Governors CBA discussed in Sundance gave that employer the right to terminate an employee’s pending internal grievance proceeding if she pursued relief in any other forum. See Sundance, 466 F.3d at 497-98 (discussing Board of Governors, 957 F.2d at 426-30). Here, Watford’s internal grievance is not terminated but is instead held in abeyance during the pen-dency of her EEOC claim. The majority asserts.that staying:a grievance and terminating a grievance are not materially different because both “make the availability of remedies contingent on not filing an EEOC charge.” But an -ordering of remedies—as is the case here—is not the same as an election of remedies. Yes, the CBA requires, that Watford resolve EEOC and judicial avenues of relief before finishing arbitration. But filing an EEOC charge or a lawsuit does not eliminate her ability to pursue arbitration; that is, it does not necessarily require her to forego one at the expense of the -other. Instead, Watford will have every opportunity to return to her internal grievance after pursuing her charge of discrimination in another forum. Thus, even were Sundance’s discussion of *457 Board, of Governors properly considered here, the terms of this CBA are fundamentally different.
II,
Watford did not suffer an adverse employment action when her grievance was held in abeyance pursuant to the CBA, and thus she should not succeed on her retaliation claims. In order to benefit from the protections of the ADEA and Title VII, Watford must show that defendants’ actions were “materially adverse to a reasonable employee." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). This “means that the employer’s actions must be harmful'to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.” Id. The majority believes that the CBA will dissuade a reasonable worker from making a charge of discrimination, whether it be filing a complaint with the EEOC or.filing a discrimination suit. I disagree.
First, the majority claims that Watford was forced to choose between “speedy, extrajudicial resolution to her- ‘ claims through the CBA’s grievance procedures” and pursuing an EEOC charge. It supports this proposition with the fact that the average person waits 399 days to receive an-arbitration award. That fact, however, really has no import in this case. It says nothing about the average time claims are resolved under this CBA. The majority also notes that Watford waited 923 days, in part, because her grievance was held in abeyance. This ignores important context as well as the terms of the CBA.
Under this CBA, employees will rarely have to make a choice about ordering their remedies. The CBA provides a process for employee grievances with specific deadlines and a stated intent that a grievance “be processed as rapidly as possible.” DE 34-4, Page ID 200-02. This is not merely aspirational language. An employee must notify her supervisor of a grievance within 15 days ,pf any- incident. After an attempt at an informal resolution, the employee can file a written grievance, and a school administrator must respond within 3 days. From there, the employee has 10 days to submit the grievance to the school’s superintendent,-The superintendent-then has 12 days to hold a hearing and issue a written decision. At this point, the decision of how to proceed is turned over to the union, which has 25 days tó decide whether it will seek arbitration of the grievance. Although the deadlines can be extended by mutual agreement, and although the CBA does not establish a deadline for every step in this process (for example, how long the supervisor has to 'attempt'"to informally resolve the initial grievance), the bulk of the process should be completed within 65 days. Thus, many employees won’t have to worry-about staying a grievance because it will be resolved well before the 300-day EEOC deadline.
Watford’s own experience belies the majority’s claim about the impact of the CBA provision on her decision. Watford filed her grievance regarding her termination on October 13, 2010. That grievance was denied by the superintendent 53 -days later on December 6, 2010. Arbitration was scheduled for July 2011, approximately one month before the EEOC deadline for her termination grievance. Watford, however, filed her EEOC charge on February 24, 2011. Thus, Watford made the decision that resulted in the stay of her grievance well ahead of the EEOC deadline, knowing that it would result in her arbitration being held in abeyance. This,was not a decision forced on her as a result of timing— Watford had an opportunity for a timely resolution of her grievance, but instead she *458 chose to file with the EEOC without giving the scheduled arbitration a chance.
Second, even if faced with the expiration of the 300-day EEOC deadline, a reasonable employee would not give up her right to judicial resolution of a discrimination claim simply because it means a delay in the resolution of her grievance. The procedures and protections outlined in the CBA’s grievance provisions pale in comparison to the robust procedures and remedies available to plaintiffs making ADEA and Title VII claims. For example, if a grievance proceeds to arbitration, the employee is no longer in control of her grievance; the CBA provides that it is the union, not the employee, who makes the decisions with respect to arbitration. All of these factors, together, cut strongly against the suggestion that a reasonable person would do anything but file an EEOC charge when faced with such a situation.
Finally, although the majority’s decision provides a considerable benefit to employees in the short term—in that an employee has considerable leverage to pursue relief in the forum she prefers and to change forums at her discretion—I question whether it will benefit employees in the long run. There is no obligation for an employer to agree to an expedited grievance procedure. Forcing employers to litigate on two fronts may lead them to abandon this method of resolution altogether. Not only will that increase costs to all parties and delay resolution of claims, but it runs the risk of undermining arbitration as a method of resolving disputes in these cases.
Because a reasonable employee in Wat-ford’s situation would not be dissuaded from filing an EEOC charge or discrimination suit, Watford did not suffer an adverse employment action when the Board stayed her grievance proceedings pursuant to the terms of the CBA. Accordingly, the district court was correct to find that she cannot succeed on her retaliation claims. We should affirm the decision of the district court on this basis.
III.
Finally, the majority goes too far in determining that the CBA provision is “retaliatory on its face.” This is, perhaps, the most problematic holding because it is made entirely on the presumption that Sundance controls. Although the district court recognized that a facially retaliatory policy is direct evidence of discriminatory intent, it never decided whether the policy was facially retaliatory or whether the CBA constituted direct evidence of retaliation. Instead, the district court limited its holding to the question of an adverse employment action, an element applicable to both the McDonnell Douglas burden-shifting and direct-evidence approaches to establishing retaliation. We need not decide anything more than whether Watford suffered an adverse employment action. I would find that she did not as a matter of law. In light of this, she cannot succeed on her retaliation claims, and all other claims have been voluntarily dismissed. I would therefore remand to the district court for entry of judgment in favor of the defendants.